<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Francisco Perez Vasquez, | |
| *Petitioner*, | Civil Action No. 26-cv-03702 |
| v. | **OPINION** |
| Luis Soto, *et al.*, | June 8, 2026 |
| *Respondents*. | |

**SEMPER**, District Judge,

**THIS MATTER** returns before the Court following its determination that Petitioner's immigration detention is governed by 8 U.S.C. § 1226(a) and that he is entitled to an individualized bond hearing. (ECF No. 9.) The issue presently before the Court is narrower. Petitioner was released from custody on May 20, 2026 pursuant to the Court's May 19 order, (ECF No. 8), before the Court's amended order issued. (ECF Nos. 9, 10.) The Government now seeks to proceed with the bond hearing and contends that Petitioner's release does not obviate that requirement. (ECF 10, at 2.) Petitioner now asks that this Court reinstate its May 19 Order, or provide Petitioner notice of the basis for its amended order. (ECF No. 11.) In the event the Court does not reinstate its May 19 Order, Petitioner asks the Court to hold the bond hearing instead of an Immigration Judge. (ECF 17.) For the reasons stated below, the Court denies Petitioner's request to reinstate the Court's May 19, 2026 release order and requires that the individualized bond hearing previously ordered pursuant to 8 U.S.C. § 1226(a) proceed before an Immigration Judge. Petitioner shall remain released pending that hearing.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Petitioner initiated this habeas action on April 8, 2026 pursuant to 28 U.S.C. § 2241.  (ECF No. 1, "Petition" or "Pet.")  Petitioner challenging his detention by Immigration and Customs Enforcement ("ICE") and contending that he was being improperly detained under 8 U.S.C. § 1225(b) rather than 8 U.S.C. § 1226(a), consistent with *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).  (*Id.*)

Petitioner is a native and citizen of Guatemala who has resided in the United States for approximately eighteen years after entering as a minor fleeing gang violence.  (*Id.* ¶ 28.)  He alleges that he appeared for a scheduled asylum interview with United States Citizenship and Immigration Services on April 8, 2026, and was arrested thereafter by ICE without a warrant on the basis of entry without inspection.  (*Id*. ¶ 30.)  Petitioner was thereafter detained at the Delaney Hall Detention Facility in Newark, New Jersey, and asserted that his detention has resulted in separation from his United States citizen child and family.  (*Id*. ¶ 31.)

The record reflects that in February 2017, Petitioner was charged with Identity Theft and Unsworn Falsification of Authorities.  (ECF No. 6, "Response" or "Resp.," at 2.)  Ultimately, Chambersburg Municipal Court issued a *nolle prosequi* for the Identity Theft charge and convicted Petitioner of Unsworn Falsification of Authorities, for which Petitioner was sentenced to 6 months' probation.  (*Id*.)

On April 26, 2017, Petitioner was arrested by ICE at Franklin County Jail in Pennsylvania.  (*Id.*)  DHS then initiated removal proceedings under 8 U.S.C. § 1182(a)(6)(A)(i), following which Petitioner was released on a $7,500 immigration bond on May 15, 2017 and remained at liberty while pursuing immigration relief.  (*Id.* at 2; Pet. ¶ 29.)  Petitioner filed an asylum application on August 1, 2018.  (Pet. ¶ 29.)  Subsequently, DHS exercised prosecutorial discretion and removal

proceedings were dismissed by an immigration judge on February 5, 2024. (*Id.*) In March 2024, Petitioner's immigration bond was cancelled after ICE determined that the conditions of bond had been satisfied. (ECF Nos. 15, 16.) Petitioner thereafter re-filed his asylum application with USCIS in April 2024. (Pet. ¶ 29.)

On April 9, 2026, the Court ordered Respondents to show cause and enjoined Petitioner's removal from the District of New Jersey. (ECF No. 3.) Respondents filed a response on April 15, 2026, which advanced statutory arguments supporting detention under § 1225(b). (Resp.) Respondents did not, and still do not, allege that Petitioner poses a danger to the community or a risk of flight. (*See id.*) Petitioner replied on April 16, 2026. (ECF No. 7.)

On May 19, 2026, the Court concluded that Petitioner was properly detained under 8 U.S.C. § 1226(a), granted the Petition, and ordered Petitioner's release within 24 hours. (ECF No. 8.) The following day, the Court amended its ruling, concluding that the appropriate remedy was an individualized bond hearing rather than release. (ECF No. 9.) The Court directed that such hearing be conducted within seven days. (*Id.*)

Prior to entry of the amended order, ICE released Petitioner from custody on May 20, 2026. (ECF No. 10.) On May 22, 2026, Respondents thereafter informed the Court of Petitioner's release and requested that a bond hearing proceed notwithstanding release. (*See id.*) Petitioner opposed further custody-related proceedings and sought preservation of the original release order on May 25, 2026. (ECF No. 11.)

On May 26, 2026, the Court ordered that Petitioner appear for an individualized bond hearing and retained jurisdiction. (ECF No. 12.) The Court later stayed that directive and required further briefing. (ECF No. 13.) On May 29, Respondents subsequently asserted that Petitioner was not released from ICE custody by an immigration judge who conducted an individualized

3

bond hearing, but that he was released on an immigration bond that had been approved and accepted by a Field Office Director with ICE under 8 U.S.C. § 1226(a). (ECF No. 14, at 1.) Respondents also asserted that Petitioner's prior immigration bond had been cancelled by ICE in March 2024 via Form I-391. (*Id.* at 2; ECF No. 15.) On June 2, Respondents asserted that they discovered that Petitioner had in fact been released on bond set by an immigration judge on May 8, 2017. (ECF No. 16.) On June 5, Petitioner reiterated his request for continued release, but asked this Court hold a bond hearing in the event it determines one is required. (ECF No. 17.)

## II.    LEGAL STANDARD

A federal district court possesses jurisdiction under 28 U.S.C. § 2241 to review the legality of immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001) (recognizing habeas corpus as a core protection against arbitrary executive detention).

The Third Circuit has repeatedly recognized that civil immigration detention implicates a substantial liberty interest protected by the Due Process Clause. *See Diop v. ICE/Homeland Security*, 656 F.3d 221, 232–33 (3d Cir. 2011); *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469, 474–78 (3d Cir. 2015). Although Congress may authorize detention during removal proceedings, such detention remains subject to constitutional limitations and must bear a reasonable relation to its regulatory purpose. *Diop*, 656 F.3d at 232–33.

Where detention is governed by § 1226(a), Congress has provided for individualized custody determinations based upon considerations including flight risk and danger to the community. *See* 8 U.S.C. § 1226(a). Accordingly, the statutory framework contemplates individualized decision-making rather than categorical detention.

## III.    DISCUSSION

First, the Court has already determined that Petitioner's detention falls under § 1226(a) and

that he is entitled to an individualized bond hearing.  (ECF No. 9.)  That decision remains. Petitioner contends that DHS's decision to re-arrest and detain Petitioner without a new individualized custody determination is inconsistent with this Court's conclusion in *Ponce Garcia v. Bondi*, No. 26-00200, 2026 WL 252425 (D.N.J. Jan. 30, 2026).  However, *Garcia*, while relevant, does not control here.  In *Garcia*, the Court ordered release because the petitioner was re-detained when his bond was still in effect.  *Id.* at *2.  Here, Petitioner was re-detained when bond was cancelled.[1]  (ECF Nos. 14, 16.)  The Court maintains discretion to order an individualized bond hearing pursuant to § 1226(a).

Second, the Court will not conduct its own bond hearing at this time.  While Petitioner urges the Court to "hold its own neutral bond hearing" due to the "[i]independent evidence of pressure on immigration judge[s] to deny bond," (ECF No. 17), the "Court…cannot speculate as to whether, if the Court were to order a bond hearing for Petitioner, the IJ would violate Petitioner's procedural due process rights."  *See Cahuec v. Soto*, No. 25-17389, 2025 WL 3524463, at *2 (D.N.J. Dec. 9, 2025); *see also F.B. v. Oddo*, No. 26-717, 2026 WL 1265352 (W.D. Pa. May 8, 2026) (court declining to conduct its own bond hearing under § 1226(a) for the same reason).  The Court leaves it to the Immigration Judge to determine, at Petitioner's individualized bond hearing, whether the March 2024 cancellation of Petitioner's bond constituted a revocation within the meaning of 8 U.S.C. § 1226(b) or whether DHS otherwise retained authority to re-detain Petitioner under § 1226(a).  The I-391 reflects only that ICE determined Petitioner had satisfied the conditions of his bond and that the bond should be cancelled.  (ECF No. 16.)  Thus, whatever legal significance the cancellation may ultimately carry, it does not reflect noncompliance with release

---

[1] The Court also notes that unpublished opinions lack precedential authority.  *See City of Newark v. U.S. Dep't of Labor*, 2 F.3d 31, 33 n. 3 (3d Cir.1993).

5

conditions or otherwise bear upon the individualized custody considerations relevant to the present proceeding. The Court expresses no view regarding whether bond should ultimately be granted, denied, or conditioned upon specific terms. Those determinations remain committed to the Immigration Judge in the first instance.[2]

Finally, the Court also concludes that Petitioner shall remain released pending his individualized bond hearing. Petitioner is presently at liberty as a result of Respondents' compliance with the Court's May 19, 2026 Order. (ECF Nos. 8, 10.) The Third Circuit has repeatedly recognized that civil immigration detention implicates a substantial liberty interest and that § 1226(a) contemplates individualized custody determinations rather than categorical detention. *See Diop v. ICE/Homeland Security*, 656 F.3d 221, 232–33 (3d Cir. 2011); *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469, 474–78 (3d Cir. 2015). Respondents do not identify any newly arising danger-to-the community concerns or evidence suggesting Petitioner has become a flight risk since his prior release. Further, Respondents do not contend that Petitioner absconded, failed to appear when required, violated any condition of release, or otherwise became unavailable to immigration authorities during the approximately nine years in which he resided in the community before his April 2026 re-detention. (*See* Pet. ¶¶ 28-29.) Relatedly, Petitioner's detention occurred after he voluntarily appeared for a scheduled interview with an asylum officer. (*Id.* ¶ 30.) Under these circumstances, requiring Petitioner to remain released pending completion of the bond process best preserves the parties' respective positions while allowing the Immigration

---

[2] To the extent Petitioner seeks clarification regarding the Court's amendment of its May 19, 2026 Order, the Court concluded upon further review of the record that the existence of Petitioner's prior criminal conviction, together with the Court's obligation to ensure that any custody determination is made through individualized process prescribed by § 1226(a), counseled in favor of requiring a prompt bond hearing rather than directing continued release without such a determination.

Judge to conduct the individualized assessment contemplated by Congress under § 1226(a).  *See*

*Zheng v. Rokosky*, No. 26-01689, 2026 WL 800203, at *10 (D.N.J. Mar. 23, 2026) (ordering

release after a bond hearing where petitioner did not pose a danger or a flight risk and maintained

a "history of complying with requirements to appear in court").

Having granted habeas relief under § 2241 and retained jurisdiction over the

implementation of that relief, the Court possesses equitable authority to preserve the status quo

pending completion of the bond proceedings ordered herein.  *See* U.S.C. §§ 2243, 1651(a).

Accordingly, the Court concludes that Petitioner shall remain released pending completion of the

individualized bond hearing ordered pursuant to § 1226(a).  Petitioner shall comply with all

directives concerning his appearance at the bond hearing and any related immigration proceedings.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, the Court denies Petitioner's request to reinstate the Court's

May 19, 2026 release order and requires that the individualized bond hearing previously ordered

pursuant to 8 U.S.C. § 1226(a) proceed before an Immigration Judge.  Petitioner shall remain

released pending that hearing.[3]   The individualized custody determination contemplated by §

1226(a) should proceed on a complete and accurate record.  An appropriate Order follows.

---

[3] Nothing in this Opinion should be construed as limiting DHS's statutory authority under the Immigration and Nationality Act beyond the circumstances presently before the Court.  The Court does not decide whether DHS possessed authority to re-detain Petitioner following cancellation of his prior bond, nor does it foreclose future custody determinations authorized by law.  The Court holds only that, given Petitioner's present release status and the Court's prior determination that an individualized custody hearing is required under § 1226(a), Petitioner shall remain released pending completion of that hearing.  Further, nothing in this Opinion should be construed as predetermining the outcome of the forthcoming bond proceeding.  That determination rests with the Immigration Judge in the first instance under the standards governing § 1226(a).

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**